IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| KIMBERLEY ANN ROSE | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| KILOLO KIJAKAZI, Acting | : | NO.  20-3222 |
| Commissioner of Social Security[1] | : | |

**MEMORANDUM AND ORDER**

ELIZABETH T. HEY, U.S.M.J.                                                                           March 29, 2022

      Kimberly Ann Rose[2] ("Plaintiff") seeks review of the Commissioner's decision denying her application for disability insurance benefits ("DIB").  For the reasons that follow, I conclude that the decision of the Administrative Law Judge ("ALJ") is supported by substantial evidence.

**I.     PROCEDURAL HISTORY**

      Plaintiff protectively filed for DIB on July 23, 2017, alleging disability beginning on August 10, 2015, as a result of bipolar disorder, borderline personality disorder, manic depression, post-traumatic stress disorder ("PTSD"), severe anxiety, attention-deficit hyperactivity disorder, recovering alcohol and drug abuse disorder, irritable bowel

---

[1]Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021, and should be substituted for Andrew Saul as the defendant in this action.  Fed. R. Civ. P. 25(d).  No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

[2]When Plaintiff applied for benefits, she was using the name Kimberley Ann Bates.  Tr. at 155, 198.  Many of the treatment records refer to her as Kimberly or Kimberley Bates.  See, e.g., id. at 383, 419.

syndrome, gastroesophageal reflux disorder, and insomnia. Tr. at 86, 155, 199.[3] Plaintiff's application was denied initially, id. at 87-91, and she requested a hearing before an ALJ, id. at 92-93, which took place on January 4, 2019. Id. at 30-71. On April 15, 2019, the ALJ issued a decision concluding that Plaintiff was not disabled. Id. at 15-24. The Appeals Council denied Plaintiff's request for review on April 14, 2020, id. at 1-3, making the ALJ's April 15, 2019 decision the final decision of the Commissioner. 20 C.F.R. § 404.981.

Plaintiff commenced this action in federal court on June 24, 2020, Doc. 2, and the matter is now fully briefed and ripe for review. Docs. 27, 34.[4]

## II.   LEGAL STANDARDS

To prove disability, a claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for . . . not less than twelve months." 42 U.S.C. § 423(d)(1). The Commissioner employs a five-step process, evaluating:

> 1.   Whether the claimant is currently engaged in substantial gainful activity;
>
> 2.   If not, whether the claimant has a "severe impairment" that significantly limits her physical or mental ability to perform basic work activities;

---

[3] To be entitled to DIB, Plaintiff must establish that she became disabled on or before her date last insured, December 31, 2020. Tr. at 33, 72.

[4] The parties consented to magistrate judge jurisdiction pursuant to 28 U.S.C. § 636(c). See Standing Order, In RE: Direct Assignment of Social Security Appeal Cases to Magistrate Judges (Pilot Program) (E.D. Pa. Sept. 4, 2018); Doc. 4.

    3. If so, whether based on the medical evidence, the impairment meets or equals the criteria of an impairment listed in the listing of impairments ("Listings"), 20 C.F.R. pt. 404, subpt. P, app. 1, which results in a presumption of disability;

    4. If the impairment does not meet or equal the criteria for a listed impairment, whether, despite the severe impairment, the claimant has the residual functional capacity ("RFC") to perform her past work; and

    5. If the claimant cannot perform her past work, then the final step is to determine whether there is other work in the national economy that the claimant can perform.

See Zirnsak v. Colvin, 777 F.3d 607, 610 (3d Cir. 2014); see also 20 C.F.R. § 404.1520(a)(4). The claimant bears the burden of proof at steps one through four, while the burden shifts to the Commissioner at the fifth step to establish that the claimant is capable of performing other jobs in the local and national economies, in light of her age, education, work experience, and RFC. See Poulos v. Comm'r of Soc. Sec., 474 F.3d 88, 92 (3d Cir. 2007).

  The court's role on judicial review is to determine whether the Commissioner's decision is supported by substantial evidence. 42 U.S.C. § 405(g); Schaudeck v. Comm'r of Soc. Sec., 181 F.3d 429, 431 (3d Cir. 1999). Therefore, the issue in this case is whether substantial evidence supports the Commissioner's conclusion that Plaintiff is not disabled. Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," and must be "more than a mere scintilla." Zirnsak, 777 F.2d at 610 (quoting Rutherford v. Barnhart, 399 F.3d 546, 552 (3d Cir. 2005)). The court has plenary review of legal issues. Schaudeck, 181 F.3d at 431.

### III.  DISCUSSION

#### A.  ALJ's Findings and Plaintiff's Claims

The ALJ found that Plaintiff suffers from the severe impairments of bipolar disorder and anxiety disorder. Tr. at 17. The ALJ next found that Plaintiff did not have an impairment or combination of impairments that met the Listings, id. at 18, and that Plaintiff retained the RFC to perform work at all exertional levels with the following non-exertional limitations: "[Plaintiff] can understand, remember, and carry out simple tasks but not at an assembly line rate; can make simple work-related decisions; can have occasional work-related interactions with co-workers, supervisors, and the general public; and can have occasional changes in the work setting." Id. at 19. Plaintiff had past relevant work as a histotechnologist, cashier, management trainee, and sales agent of business services. Id. at 22-23. Based on the testimony of a vocational expert ("VE"), the ALJ determined that Plaintiff could not return to her past relevant work, but could perform jobs in the national economy including dish washer, merchandise marker, and cook helper. Id. at 23-24. Thus, the ALJ found that Plaintiff was not disabled. Id. at 24.

Plaintiff claims that the ALJ erred in determining that Plaintiff was not disabled at any time from August 10, 2015, to the date of the ALJ's decision. Doc. 27 at 2. Specifically, Plaintiff complains that the ALJ improperly considered the opinion of the state medical consultant and the treatment notes in the record. Id. at 3-7. Defendant responds that the ALJ's decision is consistent with the statutory and regulatory scheme for evaluating claims and is supported by substantial evidence. Doc. 34 at 3-12.

B.      **Summary of the Record**[5]

Plaintiff was born on June 26, 1978, making her 39 years old at the time of her application, and 40 at the time of the ALJ's decision. Tr. at 34, 155. She has a bachelors degree in healthcare management and was a certified histotechnician.[6] Id. at 36, 200, 201. Plaintiff also served as a corpsman in the United States Navy. Id. at 36.

Plaintiff has a history of mental health treatment prior to her alleged onset date. See, e.g., tr. at 284 (8/12/04 - Psychiatric Evaluation noting diagnosis of Dysthymic Disorder), 281 (9/15/11 – Outpatient Psychiatric Evaluation noting diagnosis of major depressive disorder ("MDD") and a rule out diagnosis of generalized anxiety disorder ), 610-16 (2/27/15 – Psychological Evaluation with diagnosis of bipolar disorder). In July 2013, she was hospitalized for an overdose of Ativan and alcohol.[7] Id. at 349.

In October 2015, shortly after her alleged onset date, Yong Shin, M.D. from the Alliance Counseling Psychiatric Services Center, was treating Plaintiff for bipolar I disorder (current episode mixed, severe, without psychotic features). Tr. at 385. Plaintiff's medications included Seroquel, Effexor, and Tegretol, and she participated in

---

[5]Plaintiff's claims focus on the limitations imposed by her mental health impairments. Doc. 27. Thus, I will limit my discussion to the mental health treatment evidence in the record.

[6]At the administrative hearing, Plaintiff explained that a histotechnician processes tissue to prepare slides for a pathologist to read under a microscope to make diagnoses. Tr. at 36.

[7]Ativan is a benzodiazepine used to treat anxiety disorders. See https://www.drugs.com/ativan.html (last visited March 22, 2022).

therapy.[8] Id. at 383-85. Plaintiff began treatment at the Penn Psychiatric Center on November 16, 2015, hoping to get help with her long-standing depression. Id. at 498.[9] During the mental status examination ("MSE") portion of the biopsychosocial evaluation, Samir Farag, M.D., noted that Plaintiff's affect was appropriate and sad, and her mood was appropriate and depressed. Id. at 502. In all other respects the MSE was normal, including intact insight, judgment, memory, and thought process. Id. Dr. Farag diagnosed Plaintiff with MDD, alcohol use disorder, methamphetamine abuse, and cannabis use. Id. at 505. Plaintiff was ten weeks pregnant at the time of this evaluation. Id. at 498.

Plaintiff was seen by Sarah Thonrburg, CRNP, on December 21, 2015, who noted that Plaintiff had been tapered off her medications due to pregnancy and was then not on any medications. Tr. at 492, 494. On MSE, Plaintiff's affect was constricted and tearful and her mood was depressed. Id. at 493. Although Plaintiff's memory was intact, her insight was limited and judgment was poor. Id. Nurse practitioner ("NP") Thornburg diagnosed Plaintiff with bipolar II disorder, PTSD, borderline personality disorder, and

---

[8] Seroquel is an antipsychotic medication used to treat bipolar disorder. See https://www.drugs.com/seroquel.html (last visited March 22, 2022). Effexor (generic venlafaxine) is an antidepressant. See https://www.drugs.com/effexor.html (last visited March 22, 2022). Tegretol is an anticonvulsant used to treat seizures and nerve pain. See https://www.drugs.com/tegretol.html (last visited March 22, 2022).

[9] The Index indicates that the records from Penn Psychiatric Center are contained in Exhibits 5F, 7F, and 8F. See Index. In addition, the treatment notes in Exhibit 13F are from Penn Psychiatric despite being labeled from Plaintiff's primary care physician, Kenneth Bingener, M.D. Many of the treatment notes from Penn Psychiatric appear multiple times. For example, the notes for the January 28, 2016 visit appear seven times. See tr. at 485, 507, 544, 553, 562, 571, 580. When referring to these treatment notes, I will cite to only the first version in the record.

polysubstance abuse, and prescribed Effexor. Id. at 495, 496. About five weeks later, Plaintiff reported feeling "ten times better" on Effexor. Id. at 485. NP Thornburg noted on MSE that Plaintiff's mood was better, her affect was overall brighter, but she was tearful at times when discussing her drug use. Id. at 486.

In March 2016, NP Thornburg noted that Plaintiff's affect was brighter and appropriate and that although she had down days, her mood was "much better than it was without the medication." Tr. at 424. The following month, Plaintiff complained about difficulty falling asleep and getting comfortable. Id. at 420. Her affect was appropriate and her mood was good, but she was more emotional. Id. NP Thornburg next saw Plaintiff on June 23, 2016, after the birth of Plaintiff's daughter. Id. at 524. In describing Plaintiff's mood, Ms. Thornburg quoted "It's been a little rough, I'm tired but hanging in." Id. at 525. Plaintiff's affect was appropriate but tearful when discussing challenges, and her memory was intact. Id.

Plaintiff continued treatment at Penn Psychiatric with monthly or bimonthly visits through November 2018. Tr. at 520 (7/28/16), 516 (9/1/16), 605 (10/13/16), 601 (11/17/16), 654-700 (12/15/16 – 11/7/18). During this time, Plaintiff's treatment providers changed her medications to address her symptoms. Id. at 519 (9/1/16 - buspirone to address increased anxiety[10]), 603 (11/17/16 - Lamictal to address mood

---

[10]Buspirone (brand name BuSpar) is an anti-anxiety medication used to treat symptoms of anxiety such as fear, tension, irritability, dizziness, and pounding heartbeat. See https://www.drugs.com/buspar.html.

lability[11]), 690 (6/22/17 - ramelteon for sleep[12]), 679 (9/19/17 - venlafaxine, Lamotrigine, Seroquel[13]), 676 (10/17/17 – Topamax[14]), 668 (3/6/18 - trazodone[15]),  659 (9/6/18 - Wellbutin[16]).  Throughout this period, Plaintiff's MSEs were primarily normal with notations of labile mood, fair judgment, and limited insight.

Consultative examiner Amanda Kochan-Dewey, Psy.D., conducted a Mental Status Evaluation on September 21, 2017, tr. at 627-31, and completed a Medical Source Statement indicating that Plaintiff had no impairment in her ability to understand, remember, and carry out instructions, and mild limitation in her abilities to interact appropriately with the public, supervisors, and coworkers.  Id. at 632-33.  At the initial consideration stage on September 27, 2017, Frank M. Mrykalo, Ed.D., determined from a review of the record that Plaintiff suffered from depressive, bipolar, and related disorders, and anxiety and obsessive-compulsive disorders.  Id. at 79.  Dr. Mrykalo determined that

---

[11]Lamictal is an anticonvulsant used to treat seizures and to delay mood episodes in adults with bipolar disorder.  See https://www.drugs.com/lamictal.html (last visited March 22, 2022).

[12]Ramelteon is a sedative used to treat insomnia.  See https://www.drugs.com/mtm/ramelteon.html (last visited March 22, 2022).

[13]Lamotrigine is an anticonvulsant used to treat seizures and delay mood episodes in adults with bipolar disorder.  See https://www.drugs.com/mtm/lamotrigine.html (last visited March 22, 2022).

[14]Topamax is an anticonvulsant used to treat seizures and prevent migraine headaches.  See https://www.drugs.com/topamax.html (last visited March 22, 2022).

[15]Trazodone is an antidepressant.  See https://www.drugs.com/trazodone.html (last visited March 22, 2022).

[16]Wellbutrin is an antidepressant.  See https://www.drugs.com/wellbutrin.html (last visited March 22, 2022).

Plaintiff had mild limitations in her abilities to understand, remember or apply information, and adapt or manage oneself, and moderate limitations in her abilities to interact with others and concentrate, persist, or maintain pace.  Id.

At the administrative hearing held on January 4, 2019, Plaintiff testified that she is unable to work because she has an "'extremely hard time being able to concentrate on things." Tr. at 53-54.  She explained that if there is a lot going on around her, such as noises, she cannot pay attention and is unable to concentrate.  Id. at 54.  In addition, she testified that she is very forgetful and has bad days where she just wants to sleep.  Id.  She also complained about days where she cannot stop crying and that she suffers with mood swings.  Id.  Plaintiff testified that she has no energy and she does not go places where there are a lot of people due to anxiety and panic attacks.  Id.  Likewise, she does not drive on highways because she has panic attacks.  Id.

### C.    Plaintiff's Claim

As previously discussed, State agency medical consultant Dr. Mrykalo found from his review of the records that Plaintiff suffered from depressive/bipolar disorders and anxiety/obsessive-compulsive disorders, and had mild limitations in her abilities to understand, remember, or apply information and adapt or manage oneself, and moderate limitations in her abilities to interact with others and concentrate, persist, or maintain pace.  Tr. at 79.  In his decision, the ALJ found Dr. Mrykalo's assessment "persuasive because it is supported by the treatment records."  Id. at 21-22.  Plaintiff complains that the ALJ erred by giving "any weight to this opinion" in view of the record.  Doc. 27 at 5-6.  Plaintiff also argues that Dr. Mrykalo's opinion was inconsistent with the records from

9

Penn Psychiatric Center which establish that Plaintiff would be off task and miss work at least once a week. Id. at 6-7.

Before addressing Plaintiff's challenge to the ALJ's consideration of the medical evidence, I must first address the regulatory scheme governing such consideration. In her brief, although Plaintiff cites to the current regulation, she refers to the "weight" given to certain medical opinion evidence. Doc. 27 at 5, 6. However, the social security regulations were revised to abandon the concept of evidentiary weight and now focus on the persuasiveness of each medical opinion.

> We will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources.

20 C.F.R. § 404.1520c(a).[17] This regulation lists the factors to be utilized in considering medical opinions: supportability, consistency, relationship including the length and purpose of the treatment relationship and frequency of examinations, specialization, and other factors including familiarity with other evidence in the record or an understanding of the disability program. Id. § 404.1520c(c). The most important of these factors are supportability and consistency, and the regulation requires the ALJ to explain these factors, but does not require discussion of the others. Id. § 404.1520c(b)(2). The regulation explains that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical

---

[17]The new regulation applies to cases filed on or after March 27, 2017. 20 C.F.R. § 404.1520c. Because Plaintiff filed her application on July 23, 2017, the revised regulation is applicable to this case.

opinion(s) . . . , the more persuasive the medical opinions . . . will be." Id. § 404.1520c(c)(1). In addition, "[t]he more consistent a medical opinion(s) . . . is with the evidence from other medical sources and nonmedical sources . . . , the more persuasive the medical opinion(s) . . . will be." Id. § 404.1520c(c)(2).

Plaintiff argues that it was error to give any weight to Dr. Mrykalo's opinion because he "only saw the Plaintiff for a few minutes on one (1) occasion" and "[t]here is no indication that he reviewed any records of the Plaintiff's treatment." Doc. 27 at 6.[18] As noted above, although the treatment relationship is one factor to consider, the most important factors in analyzing the evidence are supportability and consistency with the record. Plaintiff maintains that Dr. Mrykalo's assessment is not supported by the records from Penn Psychiatric. Id. at 6-7.

In his decision, the ALJ found Dr. Mrykalo's assessment persuasive.

> [I]n September 2017, [Dr.] Mrykalo . . . , a State agency medical consultant employee, concluded that [Plaintiff] is moderately limited in her ability to carry out detailed instructions and the ability to maintain attention and concentration for extended periods. She is moderately limited in her ability to complete a normal workday and workweek without interruptions. She is moderately limited in her ability to interact appropriately with the general public. And she is moderately limited in her ability to get along with coworkers or peers without distracting them or exhibiting behavior extremes ([Tr. at 82-83]). I find this opinion persuasive because it is supported by the treatment records summarized above. Overall, the record shows that [Plaintiff] has moderate limitations in her ability to interact with others and

---

[18]Contrary to Plaintiff's assertion, Dr. Mrykalo never examined Plaintiff. The doctor's September 27, 2017 assessment was based on a review of the records, which included Dr. Kochan-Dewey's mental status evaluation, records from the Penn Psychiatric Center and Dr. Shin. Tr. at 73-77.

> concentrate, persist, or maintain pace. Therefore, [Plaintiff] is as limited as Dr. Mrykalo opined and his opinion is supported by the evidence.

Tr. at 21-22. Earlier in the decision, the ALJ discussed the records from Plaintiff's mental health treatment providers, including Penn Psychiatric.

> The record reflects that [Plaintiff] was diagnosed with bipolar disorder and anxiety; however, these conditions have been stable with medication ([tr. at 610-20]). Psychiatry notes from January 2015 to October 2015 stated that [Plaintiff] generally exhibited depressed and/or anxious mood, fair judgment but coherent thought process, intact recent and remote memory, and intact attention span and concentration (id. at 384, 391, 395]). The providers described [Plaintiff's] condition as stable and noted [Plaintiff's] continued plan for individual therapy and medication management ([id. at 385]). Such findings indicate the stable nature of [Plaintiff's] mental health conditions with mental health treatment at that time.
>
> Ensuing records continue to document that medication was helpful. [Plaintiff] visited Penn Psychiatric Center from November 2015 to November 2016. [Plaintiff's] mental status evaluations somewhat varied. Although [Plaintiff's] mood was described as depressed or anxious during several visits, her mood was also described as better or good during several other visits ([tr. at 486, 502, 517, 420]). Providers consistently noted [Plaintiff's] fair concentration and intact memory and reiterated [Plaintiff's] diagnosis of bipolar disorder ([id. at 486, 488, 505, 525, 420]). She was prescribed medication to manage depressive symptoms and on several occasions, [Plaintiff] reported that she felt good on the prescribed medication ([id. at 485, 505, 608]). Consistent with [Plaintiff's] reports, her psychiatrist also noted that she was improving and responding well to the prescribed medication ([id. at 486, 608]). Such report and findings indicate improvement in [Plaintiff's] mental health condition with mental health treatment.
>
> . . . .

> Mental health care provider notes from December 2016 through November 2018 [from Penn Psychiatric] describe [Plaintiff's] mood as depressed and down during several visits, but describe it as labile, good, or fair during most visits ([tr. at 653-703]). The provider consistently noted [Plaintiff's] fair concentration and intact memory. Additionally, [Plaintiff] reported that she was doing okay ([id. at 686, 691]). The provider prescribed [Plaintiff] medication to which the provider noted that she was responding well (id. at 660]).

Id. at 20-21.

The ALJ's discussion contains an accurate characterization of the Penn Psychiatric treatment records. When Plaintiff was taking Effexor as prescribed,[19] she said, "I feel ten times better," and NP Thornburg noted that Plaintiff's mood was better and her affect was "overall brighter" with tearfulness discussing her drug use. Tr. at 485-86; see also id. at 424 (3/14/16 – "Mood: 'I still have my down days but it's much better than it was without the medication'" and "Affect: brighter, Appropriate"). After the birth of Plaintiff's daughter, NP Thornburg added BuSpar to Plaintiff's medication regimen to address increased anxiety, id. at 519 (9/1/16), and Lamictal to address mood lability. Id. at 603 (11/17/16). Thereafter, NP Thornburg noted that "[Plaintiff] is generally stable on meds," id. at 519 (9/1/16), and noted improvement. Id. at 699 (1/26/17), 696 (2/27/17). In April 2017, NP Genevieve Burns noted that "[Plaintiff's] symptoms are controlled by current meds," and found Plaintiff's mood was good and affect congruent. Id. at 691, 693.

---

[19]Plaintiff was first prescribed Effexor on December 21, 2015. Tr. at 496. At her next visit on January 14, 2016, she stated that she had not been taking her medication because she had the flu. Id. at 511.

Plaintiff complained of increased anxiety in August 2017, tr. at 681, and mood swings in September 2017, when Plaintiff admitted that she had been using methamphetamine "off and on." Id. at 678. Syed Viqar, M.D., started Plaintiff on venlafaxine, Lamotrigine and Seroquel, id. at 679 (9/19/17), and Topamax. Id. at 676 (10/17/17). At that time, the doctor noted that Plaintiff's mood was fair and her affect congruent. Id. at 675. Thereafter, the doctor noted that Plaintiff's mood was labile and her affect remained congruent. Id. at 672 (11/14/17), 669 (1/9/18), 666 (3/6/18), 663 (5/15/18), 660 (7/10/18), 657 (9/6/18), 653 (11/7/18).

With a single exception, throughout Plaintiff's treatment at Penn Psychiatric, her concentration was fair and her memory intact. Tr. at 598 (6/23/16), 594 (7/28/16), 606 (10/13/16), 601 (11/17/16), 697 (1/26/17), 694 (2/27/17), 691 (4/27/17), 687 (6/22/17), 682 (8/15/17), 678 (9/19/17), 675 (10/17/17), 672 (11/14/17), 669 (1/9/18), 666 (3/6/18), 663 (5/15/18). The sole exception occurred on December 15, 2016, when NP Thornburg noted that Plaintiff was having difficulty with concentration. Id. at 701.

The ALJ did not err in finding Dr. Mrykalo's assessment persuasive. The doctor's conclusions regarding moderate limitations in Plaintiff's abilities to interact with others and concentrate, persist, or maintain pace, and mild limitations in her abilities to understand, remember, or apply information and adapt or manage oneself are consistent with the treatment records from Penn Psychiatric.

Plaintiff contends that "[t]he credible findings of Penn Psychiatric Center establish that the Plaintiff would be off task and miss days from work likely at least once a week which establishes that the Plaintiff is unable to perform any type of substantial activity as

testified to by the [VE]." Doc. 27 at 7.  To the contrary, the Penn Psychiatric records establish that when Plaintiff is compliant with her medications, there is an improvement in her mental health related symptoms.  See tr. at 485-86 (mood better and affect brighter when taking Effexor as prescribed), id. at 424 (same).  When she was not compliant or abused other substances, she saw increased symptoms.  See id. at 511-12 (depressed mood and tearful and constricted affect when not taking medication), 678 (complaints of mood swings when using methamphetamine).

## IV. CONCLUSION

The decision of the ALJ is supported by substantial evidence.  The ALJ properly considered the opinion evidence utilizing the new criteria, and Dr. Mrykalo's assessment is consistent with the treatment notes from Penn Psychiatric Center.

An appropriate Order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| KIMBERLEY ANN ROSE | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| KILOLO KIJAKAZI, Acting | : | NO. 20-3222 |
| Commissioner of Social Security | : | |

**O R D E R**

AND NOW, this 29th day of March, 2022, upon consideration of Plaintiff's brief and statement of issues (Doc. 27), Defendant's response (Doc. 34), and after careful consideration of the administrative record (Doc. 16), IT IS HEREBY ORDERED that:

1. Judgment is entered affirming the decision of the Commissioner of Social Security and the relief sought by Plaintiff is DENIED, and

2. The Clerk of Court is hereby directed to mark this case closed.

BY THE COURT:

/s/ ELIZABETH T. HEY

_____
ELIZABETH T. HEY, U.S.M.J.